# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:17-CV-43-MR

| | |
|---|---|
| THOMAS FLUDD, ) ) Plaintiff, ) ) vs. ) ) NANCY A. BERRYHILL, ) Acting Commissioner of Social ) Security ) ) Defendant. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 7] and the Defendant's Motion for Summary Judgment [Doc. 9].

## I. PROCEDURAL BACKGROUND

The Plaintiff, Thomas Fludd ("Plaintiff"), asserts that his degenerative disc disease, osteoarthritis, allied disorder, history of polysubstance abuse, and bipolar disorder constitute severe mental and physical impairments under the Social Security Act (the "Act") rendering him disabled. On March 6, 2012, the Plaintiff filed an application for supplemental security income benefits under Title XVI of the Act, alleging an onset date of September 30,

2007. [Transcript ("T.") at 220]. On February 5, 2013, the Plaintiff filed an application for disability insurance benefits under Title II of the Act, alleging a date of onset of January 1, 2003.[1] [T. at 207]. The Plaintiff's applications were denied initially and upon reconsideration. [T. at 131, 136, 143, 147]. Upon Plaintiff's request, a hearing was held on September 1, 2015, before an Administrative Law Judge ("ALJ"). [T. at 35-83]. Present at the hearing were the Plaintiff; George Piemonte, the Plaintiff's attorney; and a vocational expert ("VE"). [Id.]. On October 28, 2015, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. at 21-30]. On November 29, 2016, the Appeals Council denied the Plaintiff's request for review [T. at 1], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision,

---

[1] At the hearing in this matter, the ALJ indicated an "onset date of 2004." [T. at 41]. The ALJ's decision states the "claimant alleges disability beginning September 23, 2004." [T. at 21]. However, the record submitted to this Court does not contain any actual amendment to the original onset dates. The Court, nonetheless, herein refers to September 23, 2004 as the "amended alleged onset date."

Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the

pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant

4

does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age,

education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered determinations adverse to the Plaintiff at step four and, in the alternative, at step five.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date, September 23, 2004. [T. at 23]. At step two, the ALJ found that the Plaintiff has severe impairments including degenerative disc disease, osteoarthritis, allied disorder, and history of polysubstance abuse. [Id.]. At this stage, the ALJ also found Plaintiff's impairment of bipolar disorder to be nonsevere for Title II and Title XVI purposes. [T. at 24]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps, stairs, ladders, ropes and scaffolds; and claimant is limited to only frequent balancing, stooping, kneeling, crouching and crawling.

[Id. at 25].

The ALJ identified Plaintiff's past relevant work as a carpenter, painter, prep cook, grill cook, and seafood clerk. [Id. at 28]. The ALJ found, after reviewing all of the evidence, including the testimony of the VE, that Plaintiff "could perform his past relevant work as a painter, prep cook, grill cook and seafood clerk given his residual functional capacity." [Id. at 29]. The ALJ then proceeded to make alternative findings at step five. [Id.]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including cleaner, hand packer, and auto detailer. [Id.]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from September 23, 2004, the amended alleged onset date, through October 28, 2015, the date of the ALJ's decision. [Id. at 30].

## V. DISCUSSION[2]

In this appeal, the Plaintiff presents two assignments of error as grounds for reversal of the ALJ's decision. First, Plaintiff asserts the ALJ erred in finding Plaintiff's bipolar disorder to be only a nonsevere impairment and in not considering it in assessing Plaintiff's RFC. [Doc. 7-1 at 5]. Second, Plaintiff argues the ALJ erred in giving "little weight" to the medical opinion of one of Plaintiff's treating physicians. [Id.]. The Court turns to Plaintiff's first assigned error.

At step two of the sequential evaluation, the ALJ concluded that the Plaintiff's bipolar disorder was nonsevere for purposes of the Plaintiff's Title II claim[3] because such disorder was diagnosed only *after* the Plaintiff's DLI. Specifically, the ALJ found:

> The claimant also testified to being diagnosed with bipolar disorder. However, there is no medically acceptable clinical and laboratory diagnostic techniques in the medical evidence of record from an

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[3] The Plaintiff in this case made claims for benefits under two different disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. Craig v. Chater, 76 F.3d 585, n.1 (4th Cir. 1996). The Supplemental Security Income Program (SSI), established by Title XVI of the Act, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. Id. In order to establish eligibility for Title II benefits, the claimant must show that he became disabled before his date last insured (DLI). SSR 83-20; Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 340 (4th Cir. 2012). In order to establish eligibility for Title XVI benefits, the claimant must show that he was disabled at the time of the filing of the application. SSR 83-20.

>acceptable medical source that established this impairment prior to, or even remotely contemporaneous with, the alleged onset date of September 23, 2004. Indeed, at the hearing, claimant testified to the onset date of his bipolar disorder as "approximately a year ago," i.e., 2014 – 10 years after the alleged onset date herein; and three years after claimant's date last insured. The undersigned finds this impairment to be nonsevere for Title II purposes based on the foregoing.

[T. at 24 (footnote omitted)].

The ALJ erred in this conclusion in several respects. First, the ALJ erred in relying on September 23, 2004, the alleged onset date, as the date by which the Plaintiff's impairment had to be established in order to be considered severe. [T. at 24]. In order to be entitled to Title II disability benefits, a claimant must establish that the impairment existed on or before the claimant's DLI, which in this case was September 30, 2007, not by the date of onset. SSR 83-20.

This error was compounded by the ALJ's failure to consider any post-DLI evidence in determining the severity of the Plaintiff's impairment. Post-DLI medical evidence is generally admissible where such evidence "permits an inference of linkage with the claimant's pre-DLI condition" because such evidence "could be the 'most cogent proof' of a claimant's pre-DLI disability.'" Bird, 699 F.3d at 341 (quoting Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)).

> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20. Where precise evidence regarding the date of onset is not available, but there is a reasonable inference based on the medical evidence that the onset of a disabling impairment occurred at some point before medical treatment was actually sought, the date of onset of may be inferred. In that event, the ALJ "should call on the services of a medical advisor" at the hearing. Id. Further, "[i]f there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made." Id.

Here, the ALJ failed to consider the medical evidence of record and failed to obtain and examine additional available medical evidence in accordance with the requirements of SSR 83-20. In determining the onset date of Plaintiff's bipolar disorder, the ALJ relied entirely on one portion of Plaintiff's testimony from the September 1, 2015 hearing. The Plaintiff testified he was "actually diagnosed" with bipolar disorder "[a] year ago." [T.

at 58]. Plaintiff's full testimony on this issue, however, suggests that Plaintiff has been suffering from bipolar disorder for much longer than a year:

> Q. Mr. Fludd, in terms of your medications, are you able to tell me the medicines you take without referring to a list?
>
> A. …I've got two mood medicines…
>
> Q. Do you recall – the mood medications, is that for bipolar disorder?
>
> A. Yes, sir.
>
> Q. <u>When were you diagnosed with bipolar disorder?</u>
>
> A. <u>According to my psychiatrist, I should have been diagnosed when I was released from the Army[4] with a medical discharge</u> with personality put on.
>
> Q. Do you recall when you were actually diagnosed?
>
> A. A year ago.

[T. at 58]. The medical evidence of record also supports a potentially lengthier history of undiagnosed bipolar disorder, as well as the availability of "additional medical evidence concerning onset." See SSR 83-20. A mental health consult performed at a Veterans Administration Medical Center ("VAMC") dated December 11, 2014 provides:

> Veteran has past history of significant mental health issues beginning when he was in the military when he has "a mental breakdown" and was "delusional,

---

[4] Plaintiff was discharged from the Army in August, 1981. [T. at 1139].

11

> talking six languages". He was hospitalized for two weeks and then discharged from the service "a month or 2" after the hospitalization. Veteran brought his DD214 which lists "personality disorder" as his reason for discharge…. <u>Per VistaWeb[5] Review, Veteran has been treated by psychiatry intermittently for many years with diagnoses relating to substance abuse, depression, as well as "borderline and histrionic personality traits"</u>.
> …
> [Veteran] states "I tried suicide 2 times, when my wife accused me of adultery, I took alcohol and ibuprofen. Another time I tried Tylenol and alcohol." <u>Per VistaWeb report he has previously reported these incidents were in the 80s and 90s</u>….

[T. at 1076 (emphasis added)]. After this consult, Plaintiff was referred for further assessment to Dr. Keith Logan, MD. [T. at 1077]. Dr. Logan is a board certified psychiatrist. He evaluated Plaintiff on January 27, 2015. [T. at 1143]. Dr. Logan noted Plaintiff has "a [history] of marked mood lability, and ETOH/Crack Cocaine Depend." [T. at 1138]. Dr. Logan also noted that Plaintiff had two psychiatric hospitalizations following suicide attempts in 1981 and in the "late '80's," and the fact of Plaintiff's medical discharge from the Army following a nervous breakdown. [T. at 1138, 39]. At this visit, on January 27, 2015, Dr. Logan diagnosed Plaintiff with bipolar disorder. [T. at

---

[5] VistAWeb is a system by which healthcare providers at remote VA facilities can access a veteran's electronic health records from the veteran's primary facility. VistA stands for "Veterans Health Information Systems and Technology Architecture." This system is used throughout the Veterans Health Administration.

1140]. There is no indication in the ALJ's decision that he considered any of this medical evidence of record in determining the onset date of Plaintiff's impairment of bipolar disorder in accordance with the requirements of Rule 83-20.

Plaintiff's medical records also make specific reference to VistAWeb reports that may contain additional information concerning the onset of Plaintiff's bipolar disorder. [T. at 1076]. Rule 83-20 provides that the ALJ should secure this additional medical evidence before making any inferences regarding the onset date of a disabling impairment. The ALJ failed to secure these additional records in accordance with Rule 83-20. It appears the only evidence the ALJ considered in determining the onset of Plaintiff's bipolar disorder was Plaintiff's testimony that he was diagnosed "a year ago." [T. at 24]. As such, the ALJ's finding in this regard is unsupported by substantial evidence and not based on the application of the correct legal standards.

The ALJ's consideration of the additional medical records, together with the medical evidence already of record and Plaintiff's full testimony on his bipolar disorder, may very well inform the ALJ regarding both the date of onset of Plaintiff's impairment and its severity. Should inference of an onset date still be necessary after review of these additional records, however, the

ALJ should consult a medical advisor in accordance with SSR 83-20 to aid in making this inference.

Even if the ALJ properly concluded that Plaintiff's bipolar disorder was nonsevere in relation to his Title II claim, such conclusion would not foreclose the possibility of finding mental limitations in relation to his concurrently pending Title XVI claim. In order to establish eligibility for Title XVI benefits, the Plaintiff had to show that he was disabled at the time of the filing of the application, which was March 6, 2012. See SSR 83-20. With respect to Plaintiff's Title XVI claim, the ALJ concluded at step two that the Plaintiff's bipolar disorder was a non-severe impairment, without considering any of the medical evidence of record and how such evidence demonstrated the severity of his bipolar disorder as of the date of his application. Instead, the ALJ relied solely upon the Plaintiff testimony at the hearing about his activities of daily living and his "sporadic compliance" with his psychotropic medication. [T. 24]. The ALJ, however, failed to provide any explanation as to how such evidence equates to no restrictions in activities of daily living, no difficulties in maintaining social functions, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.

Even if Plaintiff's bipolar disorder were properly characterized as nonsevere, the ALJ failed to consider this impairment in assessing Plaintiff's

14

RFC.[6] The ALJ was required to consider the limiting effects of *all* of the Plaintiff's impairments, both severe and nonsevere, in assessing the Plaintiff's RFC. SSR 96-8p; 20 C.F.R. § 416.945(e). Despite finding that Plaintiff's bipolar disorder resulted in mild difficulties in maintaining concentration, persistence or pace [T. 24], there is nothing in the ALJ's decision demonstrating that he considered the Plaintiff's "mild difficulties in maintaining concentration, persistence or pace" in determining Plaintiff's RFC. In fact, after step two, the ALJ does not mention Plaintiff's bipolar disorder or his difficulties in maintaining concentration, persistence or pace again in the decision. As such, the ALJ failed to demonstrate any consideration of the limiting effects, if any, of the Plaintiff's nonsevere impairment of bipolar disorder as required by Rule 96-8p and 20 C.F.R. § 416.945(e). On remand, the ALJ must comply with the requirements of 20 C.F.R. 416.945(e) and Rule 96-8p and consider the limiting effects of all of Plaintiff's impairments, both severe and nonsevere, in determining his residual functional capacity.

---

[6] The Court addresses this argument in the event that, on remand, the ALJ again finds that Plaintiff's impairment of bipolar disorder is nonsevere and results in the same related functional limitations.

15

In light of this decision, Plaintiff's other assignment of error regarding the opinion of Plaintiff's treating physician need not be addressed but may be raised by him on remand.

## VII. CONCLUSION

For the reasons stated, the Court will remand this case for further administrative proceedings. On remand, the ALJ should secure and consider all available medical evidence concerning the onset date of Plaintiff's impairment of bipolar disorder in accordance with SSR 83-20; if necessary, consult a medical advisor at the hearing in this matter in accordance with SSR 83-20; and consider the limiting effects of all of Plaintiff's impairments, both severe and nonsevere, in determining Plaintiff's residual functional capacity in accordance with SSR 96-8p and 20 C.F.R. § 416.945(e).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 7] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 9] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for

further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 26, 2018

Martin Reidinger
United States District Judge